UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS EUGENE GRAY,<br><br>    Plaintiff,<br><br>v.<br><br>KEN CLARK, et al.,<br><br>    Defendants. | Case No. 1:20-CV-00196-JLT-SAB (PC)<br><br>ORDER REGARDING PARTIES' MOTIONS IN LIMINE<br><br>(Docs. 89, 96, 108) |

The parties filed several motions in limine regarding evidence expected to be presented at trial (Docs. 89, 96, 108). The Court finds the matters suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618.

### I.    FACTUAL BACKGROUND

On April 22, 2018, Thomas Gray was a prisoner housed at Corcoran State Prison, and Defendants Siefken, Hurtado, and Sedillo[1] were correctional officers employed by the California Department of Corrections and Rehabilitation (CDCR) at Corcoran. (Doc. 101 at 3.) At approximately 10:00 p.m. on April 22, 2018, Mr. Gray and another inmate were involved in a physical altercation in the dayroom of their housing unit. (*Id.*) Siefken and Hurtado worked as floor officers and Defendant Sedillo worked as a control booth officer in Mr. Gray's housing unit.

---

[1] Defendant Sedillo changed her name since the beginning of this litigation (formerly Jennings). (Doc. 71-2 at 1.)

1

(*Id.* at 3-4.) The parties agree that Sedillo fired a 40mm round that struck Mr. Gray. (*Id.* at 4.) All other facts surrounding the incident remain disputed.

Mr. Gray contends that he notified Defendants Siefken and Hurtado that he was concerned for his safety before the altercation with the other inmate.[2] (Doc. 101 at 4.) Mr. Gray alleges that Siefken's and Hurtado's failure to take protective actions and failure to intervene during the attack amount to deliberate indifference to his health and safety. (*Id.*; Doc. 1 at 1-2.) Mr. Gray asserts that Siefken's and Hurtado's failure to intervene to protect him during the attack constitute cruel and unusual punishment, and their actions proximately caused serious physical injuries. (Doc. 1 at 5.) With respect to Sedillo, Mr. Gray alleges that she fired the 40 mm round while he was lying face down on the floor, and her actions amount to excessive force and intentional and wanton infliction of unnecessary pain upon Mr. Gray. (*Id.* at 5-6.) Defendants deny Mr. Gray's allegations and deny that any of their actions proximately caused any injuries he sustained from the altercation. (Doc. 101 at 4, 16.)

Following the altercation on April 22, 2018, medical staff evaluated Mr. Gray and documented his injuries on a CDCR Form 7219. (Doc. 101 at 4.) CDCR issued Mr. Gray a rules violation report for fighting with another inmate. (*Id.*) On May 24, 2018, a CDCR senior hearing officer found Mr. Gray guilty of the rules violation report, which resulted in a 90-day good-time credit loss. (*Id.*)

On November 2, 2022, in anticipation of trial, Mr. Gray filed a motion in limine. (Doc. 89.) On November 14, 2022, Defendants file their own motions in limine and an opposition to Mr. Gray's motion. (Doc. 96.) Mr. Gray did not file an opposition; however, he met with counsel for Defendants prior to the file of their motions and indicated his opposition to two of their four requests. (*See* Doc. 96-1 at 2.) On January 9, 2023, Defendants submitted two additional motions in limine regarding Mr. Gray's newly submitted exhibits, in accordance with the Court's order. (Doc. 101; Doc. 108.) Mr. Gray likewise did not file an opposition to these additional motions but indicated to counsel that he objected to them. (*See* Doc. 108 at 2.)

---

[2] In Mr. Gray's original complaint, he alleges three other inmates attacked him. (Doc. 1 at 2.) However, the stipulated facts suggest that only one other inmate was involved in the altercation. (Doc. 101 at 3.)

2

## II.     LEGAL STANDARDS GOVERNING MOTIONS IN LIMINE

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The Ninth Circuit explained motions in limine allow parties to resolve evidentiary disputes ahead of trial "before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "a better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. *Sperberg,* 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, irrelevant evidence is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising

the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. If this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. The rulings made here are binding on all parties and their witnesses and not merely on the moving party.

### III.     DISCUSSION

**A.     Mr. Gray's Motion in Limine**

Mr. Gray seeks to exclude evidence of his prior felony convictions. (Doc. 89.) Defendants oppose his motion and intend to introduce Mr. Gray's conviction for first-degree burglary and assault. (Doc. 96 at 9-10.) The Federal Rules of Evidence permit evidence of a witness's prior felony convictions (i.e., crimes which are punishable by death or by imprisonment for more than one year), if that conviction occurred within the last ten years or the release from confinement occurred within the last ten years, whichever is later. Fed. R. Evid. 609(a)-(b). Mr. Gray contends that he "received his latest felony conviction on 12/6/2012." (Doc. 89 at 2.) With their opposition, Defendants submitted Mr. Gray's abstract of judgment which shows that his convictions for first-degree burglary and assault were entered on December 6, 2013. (Doc. 96-1 at 6.) Therefore, the evidence reveals that Mr. Gray's felony convictions occurred within the last ten years. Even if the conviction occurred in 2012 as Mr. Gray contends, he does not dispute that he remains in confinement due to these convictions. (Doc. 1 at 11; Doc. 101 at 1.) Thus, Mr. Gray's convictions for first-degree burglary and assault qualify under the ten-year limit of Rule 609.

In addition to the fact of Mr. Gray's felony convictions, Defendants seek to introduce the statutory name of the convictions (i.e., first-degree burglary and assault), the enhanced penalty imposed for his prior conviction of a strike felony, and the length of his sentence. (Doc. 96 at 9.) The Rules allow evidence of the fact that a witness suffered a relevant felony conviction but not information about the nature or surrounding circumstances of the felony conviction unless the conviction directly bears on issues of credibility. *Crowley v. EpiCept Corp.*, 2015 WL 13827913, at *4 (S.D. Cal. Mar. 9, 2019) ("Any facts surrounding the felony conviction, however, are deemed inadmissible because the probative value of this evidence is substantially outweighed by

1  the danger of unfair prejudice, confusing the issues, and misleading the jury."). "[A]bsent
2  exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes
3  may not include collateral details and circumstances attendant upon the conviction." *United States*
4  *v. Sine*, 493 F.3d 1021, 1036 n. 14 (9th Cir. 2007) (quoting *States v. Rubio*, 727 F.2d 786, 797 n.5
5  (9th Cir. 1983).

6  First, regarding the statutory names of Mr. Gray's felony convictions, the specific offenses
7  provide little to no probative value in comparison to the potential prejudice to Mr. Gray.
8  Defendants rely on *United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009) to support their
9  contention that the essential facts of the conviction, including the statutory name of each offense
10 and sentence length, is admissible. (Doc. 96 at 9.) In *Osazuwa*, the Ninth Circuit considered the
11 scope of admissibility for crimes involving dishonesty or false statement under Rule 609(a)(2),
12 which allows for both misdemeanor and felony convictions. *Osazuwa*, 564 F.3d at 1175. Mr.
13 Gray's convictions for burglary and assault do not implicate an act of dishonesty or false
14 statement but rather their admissibility arises under Rule 609(a)(1), which only allows for felony
15 convictions. Unlike crimes of dishonesty or false statement, where the impeachment value exists
16 in the nature of the crime, the impeachment value for a felony under Rule 609(a)(1) only derives
17 from the mere fact of conviction. *See United States v. Cabrera*, 201 F.3d 1243, 1246 n.2 (9th Cir.
18 2000). Moreover, because Mr. Gray's convictions implicate prior acts of violence and his current
19 claims involve disputed facts of a violent incident, the names of his convictions pose a significant
20 risk of unfair prejudice by suggesting he has a propensity for violence. *See* Fed. R. Evid.
21 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's
22 character in order to show that on a particular occasion the person acted in accordance with the
23 character."). Given that the statutory names of the convictions could cause greater prejudice than
24 their probative impeachment value, Defendants may only introduce evidence of the fact that Mr.
25 Gray suffered prior convictions but not that those convictions were first degree burglary and
26 assault. *See Edwards v. Bratton*, 2016 WL 1588398, at *5 (E.D. Cal. Apr. 20, 2016) ("[E]vidence
27 of the particular crimes for which Plaintiff was convicted is not allowed, as this evidence is more
28 prejudicial than probative.").

5

Second, regarding Defendants' request to admit evidence of Mr. Gray's sentence, "[t]here is some disagreement about whether the length of sentence is covered by Rule 609." *Ioane v. Spjute*, 2020 WL 2793073, at *6 (E.D. Cal. May 29, 2020). The Ninth Circuit has suggested that only statements that confirm the conviction qualifies as a Rule 609 felony are admissible. *See Osazuwa*, 564 F.3d at 1175 ("[O]nly the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility"). In this district, courts typically find the prejudicial effect of a specific sentence length outweighs any probative value, unless the sentence length bears on a relevant issue. *See Scott v. Palmer*, 2015 WL 13323123, at *1 (E.D. Cal. Sep. 30, 2015) ("Given that the probative value of the precise length of his sentence is low, the Court finds that the probative value is substantially outweighed by unfair prejudice and Defendants' inquiry shall be limited to establishing that Plaintiff is serving a lengthy prison sentence."); *see also Venable v. Patel*, 2022 WL 902835, at *1 (E.D. Cal. Mar. 28, 2022) (prohibiting defendants from introducing evidence about the "nature of the crime or the length of sentence being served"); *but see Jacobs v. Alexander*, 2015 WL 8010537, at *5 (E.D. Cal. Dec. 7, 2015) (permitting evidence of plaintiff's life sentence without parole because the sentence length demonstrated that the plaintiff had no incentive to tell the truth). Defendants have not explained what, if any, probative value Mr. Gray's fifteen-year sentence has. Therefore, Defendants may not introduce evidence or elicit questions about the precise length of his sentence.

Third, Defendants are precluded from introducing evidence regarding the enhanced penalty on Mr. Gray's conviction for similar reasons as previously stated. Defendants have not proffered any probative value of the enhancement, and its admission into evidence risks unfair prejudice. The enhancement relates to a prior conviction for a "strike felony," implicating a propensity for violence. (Doc. 96 at 9.) In addition, the conviction for this "strike felony" likely occurred outside the ten-year limit of Rule 609(b), given that the burglary and assault convictions occurred at least nine years ago, and the strike felony occurred prior to those convictions. The agedness of the conviction underlying the enhancement further weighs against admissibility. Accordingly, Mr. Gray's motion in limine is **GRANTED in part** and **DENIED in part**. Defendants may introduce the fact that he suffered felony convictions and that he is currently

1 serving a sentence for those convictions, but they may **not** admit evidence of the name or nature
2 of the crime, the precise length of his sentence, or information about the sentence enhancement.

**B.    Defendants' Motions in Limine**

1.    Evidence Relating to Dismissed Claims and Dismissed Defendants

Defendants seek to exclude any evidence relating to claims or defendants that have been dismissed. (Doc. 96 at 4-5.) On March 31, 2020, the Court dismissed Mr. Gray's claim against Warden Clark alleging failure to train Siefken, Hurtado, and Sedillo because the complaint did not state a cognizable claim. (Doc. 10; Doc. 11.) On November 4, 2021, the Court denied Mr. Gray's request to amend his complaint to add a denial of due process claim based on the Defendants' allegedly falsifying disciplinary reports against Mr. Gray. (Doc. 84; Doc. 91.) Although not entirely clear in Mr. Gray's request to amend his complaint, Defendants explained that the allegedly falsified reports concern the same incident giving rise Mr. Gary's excessive force claims. (Doc. 96 at 4.) Mr. Gray does not oppose Defendants' motion in limine insofar as it seeks to exclude evidence regarding his claims against Warden Clark. (*Id.* at 5.)

Evidence which is not relevant to any existing claim is not admissible. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Because evidence relating to the previously alleged failure to train claim against Warden Clark is not probative of whether the remaining Defendants used excessive force during the incident giving rise to Mr. Gray's claims, such evidence is inadmissible. However, evidence or testimony about the alleged falsifications of reports concerning that incident may be relevant to Mr. Gray's still-pending claims. For example, Defendants indicated they intend to introduce documentation that corroborates their account of the incident allegedly giving rise to Mr. Gray's injuries. (Doc. 96 at 10.) Evidence that the documentation is falsified bears on the credibility of Defendants' testimony. (*See id.*) Thus, it may be relevant for impeachment or rebuttal. Accordingly, Mr. Gray may present testimony or evidence relating to the falsification of incident reports but only if Defendants introduce it and only for the purposes of impeachment or to rebut Defendants' presentation of evidence. He may not present other evidence or argument relating to

7

the denial of due process claim. Defendants' motion in limine is **GRANTED in part** and **RESERVED in part** as outlined above.

2. Opinion Testimony by Mr. Gray

Defendants seek to prevent Mr. Gray from giving opinion testimony regarding the appropriateness of Defendants' use of force and medical or mental health opinions, such as diagnosis, prognosis, and causation of alleged injuries. (Doc. 96 at 5-6.) However, Defendants do not seek to preclude Mr. Gray from testifying regarding what he observed, experienced, or felt during or after the incident. (*Id.*) Under Federal Rule of Evidence 701, a lay witness may testify to opinions that are: (1) "rationally based on the witness's perception;" (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue;" and (3) "not based on scientific, technical, or other specialized knowledge" within the scope of expert testimony. *See* Fed. R. Evid. 701, 702.

For this reason, courts do not allow lay witnesses to testify as to the cause, effect, diagnosis or prognosis of their injuries, because such opinions require testimony from a medical expert. *See Howell v. Burns*, 2021 WL 4975187, *7 (E.D. Cal. Oct. 26, 2021) (prohibiting plaintiff from testifying "regarding a diagnosis, prognosis, opinions, inferences, or causation of his alleged injuries as he has no medical expertise, training, or education"). Accordingly, Mr. Gray is precluded from testifying about medical opinions related to his alleged injuries. However, Mr. Gray may testify about his own personal experiences, including how he felt before and after his alleged injuries, his symptoms or any physical limitations he experienced. *See Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1121 (E.D. Cal. 2020) ("But lay witnesses can testify as to perceived symptoms (i.e., what is felt, exhibited, or experienced over time) and how a condition affects one's ability to function.").

Regarding opinions on the use of force, Defendants argue that any opinions by Mr. Gray about whether the force used by Defendants was "reasonable, necessary, and appropriate" also constitute improper expert opinion. (Doc. 96 at 8.) Lay witnesses may not give opinions that embrace the legal test for excessive force, including whether it was excessive, unreasonable, or greater than necessary. *See Tan v. City & County of San Francisco*, 2010 WL 726985, at *3 (N.D.

Cal. Feb. 26, 2010) (granting a motion in limine to exclude a lay witness' opinion about "whether force used by Defendants was excessive, unreasonable, or greater than necessary," finding it "constitutes expert witness testimony"); *see also Sienze v. Kutz*, 2019 WL 1332184, at *2 (E.D. Cal. Mar. 25, 2019) ("What is clear is that witnesses may not make an opinion as to whether or not a legal test (in this case whether the force used was excessive) is met."). However, lay witness may testify about their observations of an incident of excessive force. *See Chien Van Bui v. City & Cnty. of San Francisco*, 2018 WL 1057787, at *7 (N.D. Cal. Feb. 27, 2018) ("Lay witnesses may testify as to what they saw and the situation as they perceived it, but they may not testify as to conclusions of whether the force the defendants used was excessive, unreasonable, or greater than necessary"). These observations may include testimony about the nature and extent of the force used, such as whether participants were acting aggressively or threateningly. *Sanchez v. Jiles*, 2012 WL 13005996, at **17-18 (C.D. Cal. June 14, 2012); *see also McMurray v. Cnty. of Sacramento*, 2012 WL 169872, at *3 (E.D. Cal. Jan. 19, 2012) (denying as moot the motion to preclude opinion about whether excessive force was used because plaintiff stated she does not intend to offer her opinion about "whether the use of force was improper, but she will state her observations in this regard").

Defendants seemingly recognize this distinction because they "do not seek to preclude Plaintiff from testifying about matters within his personal knowledge." (Doc. 96 at 6.) Mr. Gray also acknowledged he has the "ability to testify about what he felt, heard, and experienced." (*Id.*) In view of the Court's guidance above and the parties' understanding that Mr. Gray can testify about his observations of the use of force and how his injuries felt, Defendants' motion in limine is **GRANTED**.[3]

### 3. Evidence of Other Allegations of Defendants' Misconduct

Defendants seek to exclude any testimony and evidence regarding Defendants or CDCR staff witnesses' involvement in other lawsuits, claims, or incidents of alleged misconduct. (Doc. 96 at 7-8.) Defendants argue that the prior instances of alleged misconduct would be improper

---

[3] Nothing in this order prevents Mr. Gray, when acting as his own attorney such as during his closing argument, from making <u>arguments</u> about whether excessive, unreasonable, or unnecessary force was used.

character evidence under Rule 404(b), and that the danger of unfair prejudice, confusion of issues, and waste of time outweighs any relevance under Rule 403. (*Id.*) Federal Rule of Evidence 404(b) prohibits the use of prior bad acts to prove a person's character to show that the person acted in accordance with that character trait on a particular occasion. Under this rule, evidence of defendant officers' prior misconduct, such as their disciplinary records and history of complaints, are often considered inadmissible as improper character evidence. *See Bryant v. Gallagher*, 2016 WL 5846987, at *2 (E.D. Cal. Oct. 5, 2016); *see also Edwards*, 2016 WL 1588398, at *3 (granting motion in limine to preclude plaintiff from questioning defendants about their personnel records because other inmate's complaints against defendants are irrelevant and improper propensity character evidence under 404(b)).

Although some exceptions to Rule 404(b) exist, which permit the introduction of prior instances of sufficiently similar misconduct[4], Mr. Gray indicated he does not oppose Defendants' request and did not specify which records, if any, qualify for admission under an exception. (Doc. 96-1 at 2.) Accordingly, the Court **GRANTS** Defendant's motion in limine.

### 4. Evidence of State as Payor of Judgment

Defendants seek to preclude testimony and evidence that demonstrates that the State of California may be liable to pay any judgment imposed or reimburse Defendants for such judgment. (Doc. 96 at 8.) Under Federal Rule of Evidence 411, whether a person was insured at the time that a party incurred harm is inadmissible to prove liability. The State of California is required to indemnify its employees, at their request, in litigation arising from the course and scope of the employment. Cal. Gov't Code § 825. Courts typically preclude evidence related to the potential financial repercussions on state or federal government defendants, including "any statements about the State of California's finances, taxpayers paying a judgment, or how much it

---

[4] Evidence of prior bad acts may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If the prior misconduct has sufficient similarity to the current claims, defendant officers' disciplinary records may be relevant to show "the defendant officers' credibility, motive and patterns of behavior." *Zackery v. Stockton Police Dept.*, 2007 WL 1655634, at *2 (E.D. Cal. June 7, 2007); *see Harris v. German*, 2019 WL 4640503, at *8 (E.D. Cal. Sep. 24, 2019) ("In an excessive force case such as this, the relevance and discoverability of officers' disciplinary records, including unfounded complaints and allegations of misconduct, are widely recognized."); *Henderson v. Lizzaraga*, 2020 WL 6820775, at *1 (E.D. Cal. Nov. 20, 2020) (citing *Centeno v. City of Fresno*, 2016 WL 7491634, at *7 (E.D. Cal. Dec. 29, 2016)).

would cost the state" to provide compensatory relief. *Emery v. Harris*, 2014 WL 467081, at *5 (E.D. Cal. Feb. 5, 2014). Mr. Gray does not oppose this request. The motion is **GRANTED**.

5. Mr. Gray's Grievance History

Defendants seek to exclude Mr. Gray's grievance history at CDCR. (Doc. 108 at 4.) The documents within this request include his grievance history report (Doc. 70 at 4), CDCR Form 602 grievance documents (*id.* at 34-37), institutional responses to his grievances (*id.* at 38-44, 51), and several CDCR Form 22 documents (inmate requests for an item, interview, or service) regarding his grievance attempts (*id.* at 3, 5-8, 45). (Doc. 108 at 4.) Defendants argue that Mr. Gray's use of the prison's administrative grievance process is irrelevant to his Eighth Amendment claims because it is not probative of whether Sedillo used excessive force or whether Siefken and Hurtado failed to protect him from harm on April 22, 2018. (*Id.* at 4-5.) Pursuant to Federal Rule of Evidence 401, 402, and 403, Defendants request these documents be excluded. (*Id.*) Defendants also contend, but without any additional explanation, that the documents are "impermissible hearsay under Federal Rule of Evidence 802." (*Id.* at 5.)

Generally, an inmate's grievances which demonstrate he exhausted the administrative process are irrelevant to the plaintiff's claims arising from the incident. *See Zavala v. Chrones*, 2013 WL 486280, at *5 (E.D. Cal. Feb. 6, 2013) ("As a practical matter, the administrative grievance process after the assault and prior to the instant action is irrelevant to the underlying question of whether Defendants were deliberately indifferent to Plaintiff's safety."); *Thomas v. Garcia*, 2013 WL 3773861, at *4 (E.D. Cal. July 17, 2013) ("Plaintiff's inmate grievances solely demonstrate that Plaintiff exhausted his administrative as required by the Prison Litigation Reform Act, which is no longer at issue."). However, the inmate's contemporary account of the incident, set forth in an administrative complaint, may be relevant and admissible to rehabilitate the inmate's testimony at trial, if refuted by the defendants. *See* Federal Rule of Evidence 801(d)(1)(B). Under Federal Rule of Evidence 801(d)(1)(B), a proponent may offer a testifying witness's prior consistent statement to (1) "rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying" or (2) to "rehabilitate the declarant's credibility as a witness when attacked on another ground."

Defendants broadly argue that Mr. Gray's entire grievance history is irrelevant. However, Mr. Gray's CDCR Form 602 contains his recollection of the incident on April 22, 2018, shortly after it occurred. (Doc. 70 at 34-37.) Mr. Gray's prior consistent statements are not admissible as part of his initial testimony or on direct examination because they would be unduly cumulative of his testimony during trial. *See* Fed. R. Evid. 403. However, should Defendants seek to impeach Mr. Gray's truthfulness as to this or another matter, Mr. Gray may introduce his CDCR Form 602 form to rebut an attack on his testimony or to rehabilitate an attempt to impeach the truthfulness of his testimony.

The remaining portions of Mr. Gray's grievance history, however, are inadmissible. First, Mr. Gray's grievance history report shows complaints he filed before the April 2018 incident. (Doc. 70 at 4.) Portions of the inmate's grievance history, before the incident, may evince notice to prison officials and may support a claim for deliberate indifference to known risk. *See Zavala*, 2013 WL 486280, at *5 (finding a grievance filed prior to the incident was admissible because it showed notice to the prison staff of the plaintiff's safety concerns). However, the history report merely includes the dates of Mr. Gray's prior grievances and does not explain the substance of those complaints such that the Court can assess if the prior complaints might relate to notice of the April 2018 incident. (Doc. 70 at 4.) Moreover, Mr. Gray's complaint does not allege that he gave any written notice to Defendants prior to the attack. (Doc. 1 at 1.) Because he simply alleges that he "verbally inform[ed] prison official of concerns for his safety," the Court concludes Mr. Gray's history of grievances prior to the April 2018 incident do not relate to the notice element of his failure-to-protect claim. (*See id.*)

Second, the institutional responses to his grievances (Doc. at 38-44, 51) have no relevance to the claims. The prison administration's decision regarding Mr. Gray's complaint and his appeals is irrelevant to whether Sedillo used excessive force and whether Siefken and Hurtado failed to protect Mr. Gray from harm. Furthermore, jurors may give undue weight to decisions by administrative officials regarding the factual circumstances that they must independently evaluate. *United States v. Wiggan*, 700 F.3d 1204, 1211 (9th Cir. 2012) ("[J]urors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional

factfinder rather than determine those issues for themselves"). Under Federal Rule of Evidence 403, any relevance of the institutional responses is outweighed by this prejudicial effect.

Finally, Mr. Gray's several CDCR Form 22 documents (inmate requests for an item, interview, or service) regarding his grievance attempts likewise lack relevance. (Doc. at 3, 5-8, 45). None of the documents appear to contain any statements directly regarding the April 2018 incident but rather concern grievances about the prison's handling of Mr. Gray's initial complaint following the incident. (*Id.*) Even if improper, the prison's procedures for processing Mr. Gray's complaint after the incident have no probative value to whether the Defendants violated Mr. Gray's rights and caused Mr. Gray's alleged injuries on April 22, 2018. Accordingly, Defendants' request is **DENIED** as to Mr. Gray's CDCR Form 602 and **GRANTED** as to all remaining portions of Mr. Gray's grievance history.

   6. Mr. Gray's Office of Internal Affairs Letters

Defendants seek to exclude Mr. Gray's post-incident correspondence with the Office of Internal Affairs (Doc. 70 at 45-60).[5] (Doc. 108 at 6-7.) Defendants argue the correspondence with Internal Affairs is irrelevant under Rules 401 and 402. (*Id.*) With respect to the responses from Internal Affairs, Defendants further argue that the responses constitute hearsay under Federal Rule of Evidence 802 and Mr. Gray lacks a foundation for the responses because he "has not listed the authors of the responses as witnesses to testify at trial." (*Id.*)

Regarding the responses from Internal Affairs, the Court agrees they are inadmissible. (Doc. 70 at 49-50.) The responses include information about how Internal Affairs processed Mr. Gray's complaints but do not include any factual details about the April 2018 incident. (*Id.*) The Internal Affairs' conclusion that the CDCR staff did not violate CDCR policy in their review of Mr. Gray's administrative grievances has little, if any relevance, to whether Defendants' violated Mr. Gray's rights during the April 2018 incident. *See* Fed. R. Evid. 401; *see also Branch v. Umphenour*, 2017 WL 220129, at *8 (E.D. Cal. Jan. 18, 2017) (finding the results of the internal

---

[5] Defendants listed page 45 of Mr. Gray's proposed exhibit list both as part of his grievance history and as part of his correspondence with Internal Affairs. The document appears more likely to be part of Mr. Gray's miscellaneous requests in his CDCR Form 22 because he asks for a polygraph examination. (Doc. 70 at 45.) Regardless, the document contains no information relevant to the issues to be presented at trial and therefore, may not be introduced.

13

affairs investigation irrelevant to whether defendants failed to protect the plaintiff during the incident subjected to the investigation). Even if relevant, the statements contain inadmissible hearsay, and Mr. Gray lacks a witness who might be able to lay a foundation for a hearsay exception. *See* Fed. R. Evid. 801, 803(6).

Mr. Gray's letter that he sent *to* Internal Affairs, however, may be relevant for purposes of rebuttal and rehabilitation. (Doc. 70 at 46-48.) Mr. Gray's letters to Internal Affairs, if written before a motive to fabricate arose, may explain his version of the events that occurred on April 22, 2018, including Siefken's and Hurtado's failure to intervene during the attack and Sedillo's use of the alleged excessive force. (*Id.*) As explained above with respect to Mr. Gray's CDCR Form 602, his prior consistent statements that recount Defendants' actions during the April 2018 incident may be relevant and admissible if Defendants attempt to impeach Mr. Gray's truthfulness of his testimony during trial. Under Federal Rule of Evidence 801(d)(1)(B), Mr. Gray may use the letters to Internal Affairs to "rebut an express or implied" challenge to the truthfulness of his testimony of the events on April 22, 20218 or to rehabilitate an attack to his credibility as a witness. However, Mr. Gray may not introduce his letters to Internal Affairs during his initial testimony or on direct examination because it would be unduly cumulative of his testimony during trial. *See* Fed. R. Evid. 403. Accordingly, Defendants' motion is **GRANTED in part** and **DENIED in part** as detailed above.

## IV. ORDER

Based on the foregoing, the Court **ORDERS**:

1. Mr. Gray's motion in limine (Doc. 89) is **GRANTED in part** and **DENIED in part**.
2. Defendants' motions in limine (Doc. 96) are **GRANTED in part** and **RESERVED in part.**

///

///

///

///

3.   Defendants' motions in limine (Doc. 108) are **GRANTED in part** and **DENIED in part**.

IT IS SO ORDERED.

Dated:    **February 7, 2023**

UNITED STATES DISTRICT JUDGE